Argued and submitted September 3, Court of Appeals and Board of Parole affirmed
November 24, 1987

## ERIK CHRISTIAN RISE,
*Petitioner on Review,*

*v.*

## BOARD OF PAROLE,
*Respondent on Review.*

(CA A39343; SC S34089)

745 P2d 1210

Lawrence Matasar, Portland, argued the cause and filed the petition on behalf of the petitioner on review. With him on the petition was Hoffman, Matasar & Glaeser, Portland.

J. Scott McAlister, Assistant Attorney General, Salem, argued the cause on behalf of the respondent on review.

GILLETTE, J.

Linde, J., concurred and filed an opinion.

## GILLETTE, J.

This case involves the effect, if any, that a plea agreement between a criminal defendant and a district attorney can have on the Board of Parole's subsequent decisions regarding the defendant's parole date. The Board in the present case determined that it was not "bound" by the terms of such a plea agreement, and the Court of Appeals affirmed without opinion. *Rise v. Board of Parole,* 84 Or App 741, 735 P2d 380 (1987). We hold that the Board was not bound by the terms of the plea agreement and that it did not err in refusing to enforce the agreement. Accordingly, we affirm.

Petitioner and his co-defendant, Troy Stewart, each were charged with two counts of aggravated murder, ORS 163.095, in connection with the death of Ralph Anderson. Elaborate pretrial negotiations between the district attorney and petitioner's attorney culminated in a plea agreement with the following pertinent provisions:

"The purpose of this agreement is to secure the cooperation of Mr. Rise in the prosecution and conviction of Troy Stewart. The State of Oregon is entering into this agreement because, although Mr. Rise is fully and completely guilty of the offenses he is charged with, his role in these offenses was secondary and subsidiary to the role of Troy Stewart.

"Mr. Rise agrees to meet with authorities from state law enforcement at such reasonable times and places as they may deem necessary to tell honestly, truthfully, and completely all he knows about the crimes set forth above and these persons involved in those crimes. He also agrees to appear at any grand jury, trial proceeding, or any other court proceeding in connection with these crimes and to testify fully and truthfully.

"In return for Mr. Rise's fulfilling each and every obligation of this agreement, the State of Oregon agrees to:

"1.   Allow Mr. Rise to stipulate to the facts on a charge of Murder based on this incident. This stipulation will occur after trial or plea in *State v. Stewart, supra.*

"2.   Not oppose Mr. Rise's truthful statement that he knew the victim, Mr. Anderson. *The purpose of this portion of this agreement is to assure that this crime is treated as a subcategory 2 Murder by the Oregon Board of Parole, thereby setting Mr. Rise's range at 10-13 years.*

"3.   *To send a statement to the Oregon Board of Parole*

*requesting that Mr. Rise serve 10 years. If Mr. Rise requests that the State provide the Parole Board with additional information or appear in person before the Parole Board, the State will do so.*

"4. To permit Mr. Rise to continue with the appeal of the remand proceedings which resulted in this case being sent to adult court.

"These four obligations are the only obligations imposed on the State of Oregon by this agreement." (Emphasis supplied.)

On July 17, 1985, petitioner entered a guilty plea to one count of murder, ORS 163.115, and was sentenced to life imprisonment. In accordance with the plea agreement, petitioner provided the district attorney with a detailed account of the crime. According to petitioner, that statement was included in a Parole Analysis Report, which was submitted to the Board of Parole. Petitioner's attorney requested that a new Parole Analysis Report be prepared without the inclusion of petitioner's statement because, under the terms of the plea agreement, the district attorney should not have submitted the statement to the Board. In response, the Board issued a Board Action Form that stated, in part:

"The Board is not bound by any agreement the D.A.'s office makes. If the material is relevant, the Board will make use of it. * * *."

Based on the facts set out in the Parole Analysis Report, the Board concluded that petitioner had engaged in "significant planning" in committing the murder. Therefore, and in spite of the fact that petitioner knew the victim, the Board classified petitioner's crime as a "Subcategory 1" murder, and set his matrix range at 120 to 168 months (10 to 14 years).[1]

Petitioner sought judicial review of the Parole Board decision, arguing, *inter alia,* that the Board erred in failing to

---

[1] Under OAR 255-35-010, Exhibit A, murders are classified as either Subcategory 1, which involves "[s]tranger to stranger; cruelty to victim; prior conviction for Murder or Manslaughter; evidence of significant planning or preparation," or Subcategory 2, which involves "[a]ll other cases of Murder." A Subcategory 1 murder would subject a prisoner with petitioner's history/risk assessment score (*see* OAR 255-35-005(2)) to a matrix range of 10-14 years. A Subcategory 2 murder by the same person would result in a matrix range of 8-10 years. OAR 255-35-025, Exhibit C.

honor the district attorney's promises that petitioner's crime would be treated as a "Subcategory 2" murder and that the district attorney would not submit any information to the Board except a request that he be paroled after 10 years, unless petitioner requested additional information. The Court of Appeals affirmed without opinion. We allowed review to consider the effect of a district attorney's promises in a plea agreement on subsequent decisions by the Board of Parole.

It is important at this juncture to emphasize precisely what kind of case confronts us. This is a case of judicial review of a decision of the Board of Parole. By statute, our review in such cases is limited to whether the Board committed one or more legal errors of a particular kind. ORS 144.335(3); 183.482(8);[2] *see also Price v. Board of Parole,* 301 Or 393, 723 P2d 314 (1986). The Board is not a trial court of general and equitable jurisdiction, authorized to conduct broad fact-finding hearings on issues extraneous to its specifically prescribed functions and, in reviewing the Board's actions, neither are we.

Petitioner first argues that the plea agreement included a promise by the district attorney that the Board

---

[2] ORS 144.335(3) states:

"The court may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8). The filing of the petition shall not stay the board's order, but the board may do so, or the court may order a stay upon application on such terms as it deems proper."

ORS 183.482(8) states:

"(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

would treat petitioner's crime as a Subcategory 2 murder. We have some difficulty with this assertion because it selects an interpretation of paragraph 2 of the plea agreement which, while reasonable, is not the only possible reading or, indeed, even necessarily the most likely reading. While the district attorney promised to inform the Board of Parole that petitioner met one of the criteria that would take him out of Subcategory 1 of OAR 255-35-010, Exhibit A, in order "to assure that this crime is treated as a Subcategory 2 murder," there is no mention of the other criteria petitioner also had to meet to achieve this goal. The extent of the district attorney's obligation is unclear. A factual hearing on the actual negotiations between the parties and their understanding of the agreement would clear up this ambiguity, but the Board is not normally thought of as being in the business of holding such hearings. *See* ORS 144.110 *et seq.* For the purposes of this opinion, however, we will assume, without deciding, that petitioner's reading of the plea agreement is correct. Petitioner argues that the Board of Parole was bound by that agreement and that, in finding the crime to be a Subcategory 1 murder, it breached the plea agreement.

The Board itself took no part in the plea negotiations and was not a party to the plea agreement between the district attorney and petitioner. Therefore, it could be bound by the agreement only if the district attorney had the authority to bind the Board, requiring it to treat his crime as a Subcategory 2 murder.

A district attorney's authority to conduct plea negotiations is governed by ORS 135.405 to 135.415. ORS 135.405(3) provides:

> "The district attorney in reaching a plea agreement may agree to, but is not limited to, one or more of the following, as required by the circumstances of the individual case:

> "(a) To make or not to oppose favorable recommendations as to the sentence which should be imposed if the defendant enters a plea of guilty or no contest to the offense charged;

> "(b) To seek or not to oppose dismissal of the offense charged if the defendant enters a plea of guilty or no contest to another offense reasonably related to the defendant's conduct; or

"(c)   To seek or not to oppose dismissal of other charges or to refrain from bringing potential charges if the defendant enters a plea of guilty or no contest to the offense charged."

Petitioner argues that, under ORS 135.405(3), a district attorney has broad authority to make concessions in plea negotiations. Admittedly, the list of permissible concessions is not exclusive. However, the items on that list all are matters within the normal scope of a district attorney's duties. A district attorney has broad discretion to make charging decisions. As an advocate for the state, the district attorney has the authority to make, or to forego making, recommendations to the sentencing court. Parole decisions, however, are statutorily delegated to the Board of Parole. ORS 144.005 to 144.395. It is unlikely that, in creating the list of permissible promises in ORS 135.405(3), the legislature intended to authorize a district attorney to usurp the function of the Board of Parole. Neither the statutory language nor any legislative history of which we have been made aware supports such a construction of the authority of the district attorney. Accepting petitioner's reading of the plea agreement to the effect that the district attorney promised petitioner that the Board would treat his offense as a Subcategory 2 murder, the Board was not bound by that unauthorized promise.

■      Petitioner also argues that, as part of the plea agreement, the district attorney promised that his office would not submit any information to the Board, except a statement recommending that petitioner be paroled after 10 years, unless petitioner requested that additional information be submitted. According to petitioner, the district attorney breached that agreement by submitting a copy of petitioner's detailed account of the crime to the Board. Again, for the purposes of this opinion, we will assume that the facts are as petitioner represents.[3] We also will assume that the district attorney has the authority to withhold such information from the Board.

The Board has broad authority to consider evidence

---

[3] Except for the letter from petitioner's attorney to the Board, there is no evidence in the record that the district attorney sent petitioner's statement to the Board. The Parole Analysis Report states that it is based on information obtained from the Portland Police Bureau. The state, however, does not dispute petitioner's version of the facts.

in a parole hearing. ORS 144.315.[4] Moreover, in setting an initial parole release date, the Board is *required* to consider the presentence investigation report or, if no such report has been prepared (as was true in this case), a comparable report prepared by the Corrections Division. ORS 144.120(3). Administrative rules promulgated by the Board require that the report include the details of the crime. OAR 255-30-035, Exhibit F. These provisions authorize the Board to consider the type of evidence at issue here. There is no statutory basis for requiring the Board to refuse to consider relevant evidence submitted to it through proper channels.

Finally, petitioner argues that, even if the Board was not bound by the terms of the plea agreement, this court, nevertheless, should order the Board to enforce those terms. Petitioner's argument in favor of specific performance has force, because it is quite possible that rescission of the plea agreement would not be an adequate remedy in this case. In *Santobello v. New York,* 404 US 257, 92 S Ct 495, 30 L Ed 2d 427 (1971), the Supreme Court held that, when the prosecution breaches a plea agreement with a criminal defendant, the defendant is entitled either to specific enforcement of the agreement or vacation of the guilty plea. 404 US at 262-63. Here, petitioner agreed that he would enter his guilty plea after he had testified against his co-defendant. Presumably, then, petitioner already has performed his part of the bargain. If the state cannot be held to its promises, it is possible that petitioner would be left with no meaningful remedy for the state's breach of a plea agreement under which petitioner was induced to waive a battery of constitutional protections. The prospect of such a result is unsettling.

There is precedent in the federal courts for judicial enforcement of a prosecutor's "unfulfillable" promises. *See, e.g., Palermo v. Warden, Green Haven State Prison,* 545 F2d

---

[4] ORS 144.315 states:

"Evidence may be received in proceedings conducted by the State Board of Parole even though inadmissible under rules of evidence applicable to court procedure and the board shall establish procedures to regulate and provide for the nature and extent of the proofs and evidence and method of taking and furnishing the same in order to afford the inmate a reasonable opportunity for a fair hearing. The procedures shall include the means of determining good cause not to allow confrontation of witnesses or disclosure of the identity of informants who would be subject to risk of harm if their identity is disclosed."

286, 296 (2d Cir 1976), *cert dismissed* 431 US 911 (1977)(enforcing district attorney's promise that the defendant would be paroled within a certain time); *Correale v. United States,* 479 F2d 944 (1st Cir 1973)(enforcing prosecutor's promise that the defendant would receive a particular sentence, although the sentence violated federal minimum sentencing statute); *but see Smith v. United States,* 321 F2d 954 (9th Cir 1963)(setting aside guilty plea where prosecutor promised a sentence less than the statutory minimum). *See generally* Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Calif L Rev 471 (1978); Note, *Specific Performance of "Unfulfillable" Plea Bargains,* 14 J L Reform 105 (1980); Note, *Enforcing Unfulfillable Plea Bargaining Promises,* 13 Wake Forest L Rev 842 (1977); Note, *Specific Performance of a Prosecutor's Unfulfillable Promise: A Right or a Remedy?,* 9 Conn L Rev 483 (1977).

■   Because of the posture of this case, however, we are not able to reach that issue. As noted, our review of parole board decisions is limited to whether the Board erred in reaching its decision. ORS 144.335(3); 183.482(8). We already have determined that the Board did not breach the plea agreement between petitioner and the district attorney, because the Board was not a party to the agreement and was not otherwise bound by the terms of the agreement. We further hold that the Board did not err in refusing to enforce the agreement. The Board of Parole is not in the business of construing plea agreements or of fashioning appropriate remedies for their breach. Those questions are matters for judicial determination. *See* Or Const, Art III, § 1 (separation of powers); Art VII (jurisdiction of state courts). If the plea agreement was breached in this case, then petitioner's remedy lies elsewhere—perhaps in habeas corpus or post-conviction relief, where the court is authorized to fashion appropriate relief. *See* ORS 34.310; 34.360; 34.580; 34.590; 34.600; 138.520; 138.530(1)(a).

The decisions of the Board of Parole and the Court of Appeals are affirmed.

**LINDE, J.,** concurring.

I agree that the Board of Parole did not commit a legal error by considering petitioner's account of the crime. The district attorney made no promise in the plea agreement

quoted in the Court's opinion that the Board would not do so.[1] He said that the purpose of one "portion of this agreement" was to assure that defendant's crime was treated as a "subcategory 2 Murder" by the Parole Board. The word "portion" could refer to paragraph 2, in which the district attorney agreed not to oppose defendant's statement that he knew the victim or, less plausibly, it might refer to all four "obligations imposed on the State of Oregon" by the agreement. Either way, it does not promise that the Board would treat defendant's crime as a "subcategory 2 Murder"; it only says that this is the purpose of the promise or promises that the district attorney did make. The agreement on its face shows that the Board was understood to be a separate agency which could "treat" a case one way or another and to which the prosecutor would "send a statement." We therefore need not now decide what consequences would follow if the district attorney had purported in the name of the "the State of Oregon" to make the promise that defendant claims.

---

[1] To repeat the text for convenience, it provided:

"The purpose of this agreement is to secure the cooperation of Mr. Rise in the prosecution and conviction of Troy Stewart. The State of Oregon is entering into this agreement because, although Mr. Rise is fully and completely guilty of the offenses he is charged with, his role in these offenses was secondary and subsidiary to the role of Troy Stewart.

"Mr. Rise agrees to meet with authorities from state law enforcement at such reasonable times and places as they may deem necessary to tell honestly, truthfully, and completely all he knows about the crimes set forth above and these persons involved in those crimes. He also agrees to appear at any grand jury, trial proceeding, or any other court proceeding in connection with these crimes and to testify fully and truthfully.

"In return for Mr. Rise's fulfilling each and every obligation of this agreement, the State of Oregon agrees to:

"1. Allow Mr. Rise to stipulate to the facts on a charge of Murder based on this incident. This stipulation will occur after trial or plea in *State v. Stewart, supra.*

"2. Not oppose Mr. Rise's truthful statement that he knew the victim, Mr. Anderson. The purpose of this portion of this agreement is to assure that this crime is treated as a subcategory 2 Murder by the Oregon Board of Parole, thereby setting Mr. Rise's range at 10-13 years.

"3. To send a statement to the Oregon Board of Parole requesting that Mr. Rise serve 10 years. If Mr. Rise requests that the State provide the Parole Board with additional information or appear in person before the Parole Board, the State will do so.

"4. To permit Mr. Rise to continue with the appeal of the remand proceedings which resulted in this case being sent to adult court.

"These four obligations are the only obligations imposed on the State of Oregon by this agreement."

By purporting to be made for "the State of Oregon," the agreement highlights both a formal and real problem. Formally, the "State of Oregon" certainly encompasses the Board of Parole as well as the state's prosecutors. ORS 135.405 to 135.415 authorize "the district attorney" to enter a plea agreement in which that official may agree to do or not to do various things within his delegated authority, not to make agreements for the State of Oregon generally. Even as to prosecutions, the statute seems not to authorize a district attorney in our fragmented system to bind the State with respect to charges that have been or may be brought by another prosecutor in a different county. Plea agreements therefore should be phrased accordingly rather than as agreements made by the "State of Oregon" which "impose obligations on the State of Oregon."

The real problem, of course, inheres in the endemic reliance on plea agreements to manage the overloaded criminal dockets of contemporary society. Plea bargaining has been much criticized, and the widespread assumption that it is indispensable has not gone unchallenged. *See, e.g.,* Alschuler, *Implementing the Criminal Defendant's Right to Trial: Alternatives to the Plea Bargaining System,* 50 U Chi L Rev 931 (1983), Langbein, *Torture and Plea Bargaining,* 46 U Chi L Rev 3 (1978).[2] It is an obstacle to consistency in the prosecu-

---

[2] Professor Alschuler summarizes the criticisms (not all of which apply in Oregon):

"Plea bargaining makes a substantial part of an offender's sentence depend, not upon what he did or his personal characteristics, but upon a tactical decision irrelevant to any proper objective of criminal proceedings. In contested cases, it substitutes a regime of split-the-difference for a judicial determination of guilt or innocence and elevates a concept of partial guilt above the requirement that criminal responsibility be established beyond a reasonable doubt. This practice also deprecates the value of human liberty and the purposes of the criminal sanction by treating these things as commodities to be traded for economic savings—savings that, when measured against common social expenditures, usually seem minor.

"Plea bargaining leads lawyers to view themselves as judges and administrators rather than as advocates; it subjects them to serious financial and other temptations to disregard their clients' interests; and it diminishes the confidence in attorney-client relationships that can give dignity and purpose to the legal profession and that is essential to the defendant's sense of fair treatment. In addition, this practice makes figureheads of court officials who typically prepare elaborate presentence reports only after the effective determination of sentence through prosecutorial negotiations. Indeed, it tends to make figureheads of judges, whose power over the administration of criminal justice has largely been transferred to people of less experience, who commonly lack the information that

tion of similar cases, as demanded by the Oregon Constitution,[3] because not only discretionary charging decisions but the subsequent disposition of prosecutions without trial threaten to become a function of the state of the docket and of budgeted resources more than of the actual crimes committed. It produces an appearance of hypocrisy both when crimes known to the victims and the public are not prosecuted and when a maximum sentence for what on the record is only one conviction results from taking into account other offenses that were not charged or were withdrawn in a plea agreement. On the other side, one may see plea bargaining as a necessary corrective to the inadequately checked potential of multiplying charges and consecutive sentences.

Plea bargaining sacrifices truth to pragmatic administration. The problem is that the sacrifice achieves its pragmatic goal only if defendants believe that their expectations will be fulfilled. This may include a belief that a judge will improperly impose a heavier sentence after trial than on a guilty plea, perhaps rationalized as demonstrating defendant's contrition or acceptance of responsibility. But, as the Court points out, the Board of Parole, which determines the actual time a prisoner serves, is not bound to honor the prosecutor's recommendation. Nor is the sentencing judge, but when a judge lets himself be informed of a tentative agreement and rejects it, or concurs and later changes his mind, the defendant is entitled to withdraw a guilty plea and demand a trial. ORS 135.432.[4] It seems inevitable that in making the choice to

---

judges could secure, whose temperaments have been shaped by their partisan duties, and who have not been charged by the electorate with the important responsibilities that they have assumed. Moreover, plea bargaining perverts both the initial prosecutorial formulation of criminal charges and, as defendants plead guilty to crimes less serious than those that they apparently committed, the final judicial labeling of offenses."

50 U Chi L Rev at 932-33 (footnotes omitted). Interesting studies from a variety of perspectives are collected in a conference symposium, Plea Bargaining, 13 Law & Soc Rev 189 (1979).

[3] The Oregon Constitution, Article I, section 20 states:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

See State v. Freeland, 295 Or 367, 667 P2d 509 (1983).

[4] ORS 135.432 provides:

"(1) The trial judge shall not participate in plea discussions, except to inquire

accept a plea agreement or to remain independent, courts, too, are drawn into the contradiction between pragmatism and principle.

Defense counsel are obliged to advise their clients of "the alternatives available and of factors considered important by the defense counsel or the defendant in reaching a decision." ORS 135.425. Those factors include the limited and nonbinding nature of the parts of an agreement that depend on actions of the court and of the Board of Parole, and, I should think, counsel's assessment of their likely reactions. Inability to control or predict the Board's reaction may remove one chip from the plea-bargaining process. By showing that the "State of Oregon" acting through its Board of Parole often will make a different choice between accuracy and efficiency from that made by the "State of Oregon" acting through its prosecutors, today's decision correctly weights the scales a little toward accuracy and away from efficiency.

---

of the parties about the status of any discussions or to participate in a tentative plea agreement as provided in subsections (2) to (4) of this section. Any other judge, at the request of both the prosecution and the defense, or at the direction of the presiding judge, may participate in plea discussions. Participation by a judge in the plea discussion process shall be advisory, and shall in no way bind the parties. If no plea is entered pursuant to these discussions, the advice of the participating judge shall not be reported to the trial judge. If the discussion results in a plea of guilty or no contest, the parties, if they both agree to do so, may proceed with the plea before a judge involved in the discussion. This plea may be entered pursuant to a tentative plea agreement as provided in subsections (2) to (4) of this section.

"(2) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty or no contest in the expectation that charge or sentence concessions will be granted, the trial judge, upon request of the parties, may permit the disclosure to the trial judge of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. The trial judge may then advise the district attorney and defense counsel whether the trial judge will concur in the proposed disposition if the information in the presentence report or other information available at the time for sentencing is consistent with the representations made to the trial judge.

"(3) If the trial judge concurs, but later decides that the final disposition of the case should not include the sentence concessions contemplated by the plea agreement, the trial judge shall so advise the defendant and allow the defendant a reasonable period of time in which to either affirm or withdraw a plea of guilty or no contest.

"(4) When a plea of guilty or no contest is tendered or received as a result of a prior plea agreement, the trial judge shall give the agreement due consideration, but notwithstanding its existence, the trial judge is not bound by it, and may reach an independent decision on whether to grant sentence concessions under the criteria set forth in ORS 135.415."