Argued and submitted June 30, affirmed November 3, reconsideration denied December 22, 1993, petition for review denied January 18, 1994 (318 Or 325)

DOUGLAS R. FLOWERS,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

(CA A69702)

862 P2d 1312

Lawrence J. Hall, Deputy Public Defender, argued the cause for petitioner. With him on the brief was Sally L. Avera, Public Defender.

Harrison Latto, Assistant Attorney General, argued the cause for respondent. On the brief were Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Yuanxing Chen, Assistant Attorney General.

Before Edmonds, Presiding Judge, and Deits and Riggs,[*] Judges.

EDMONDS, P. J.

---

[*] Riggs, J., *vice* Warren, J.

## EDMONDS, P. J.

Petitioner seeks review of a Board of Parole and Post-Prison Supervision (Board) order that set his parole release date. ORS 144.335. He makes multiple arguments regarding the compliance with and the constitutionality of a rule pertaining to confidential communications made by third persons to the Board. We affirm.

In March, 1990, petitioner was convicted of murder and sentenced to life imprisonment with a five-year mandatory gun minimum, ORS 161.610, and a ten-year concurrent judicial minimum term, ORS 163.115. During his prison term hearing held in March, 1991, Board members Santos and Samuelson told petitioner that the Board had received letters, the contents of which would not be revealed to him:

"SANTOS: [W]e also have another letter dated ... received by the Board on March 4th 1991 that pursuant to * * * [OAR] 255-15-010(1)(c)(d), that the records will not be disclosed to the person, to any person. And there is another letter dated January 4th. Likewise, a person under this category that will not be disclosed to any person or agency unless [*sic*] disclosure would endanger the inmate or other persons, or compromise the ... privacy of the inmate or another person. Basically, these are being kept confidential communications.

"FLOWERS: You mean I do not know anything about them?

"SAMUELSON: Right.

"SANTOS: Right.

"SAMUELSON: And they will not be disclosed to you today.

"SANTOS: Because it would compromise the privacy of either yourself or another person. Or compromise or endanger yourself or another person. And basically pursuant to Rules and Statutes[,] the Board will keep those confidential. In other words, the Board is considering those today.

"FLOWERS: They are for me? I mean, they are good letters for me, or ...

"SANTOS: I cannot tell you if they are positive, negative or ... that is the confidentiality factor. Okay?"

The Board set a prison term of 240 months.

■    First, petitioner argues that the Board failed to comply with OAR 255-15-010(2), which provides:

> "When disclosure of information is denied to a prisoner[,] a written statement of the reasons for denial must be entered into the record for review by the Attorney General and the courts only."

The issue is whether the statement in the transcript complies with the rule's requirements. ORS 144.335(2) provides that "[t]he final order and the proceedings underlying the order are subject to review by the Court of Appeals." Therefore, the record properly before us includes the transcript of the proceedings. Because the transcript includes a statement of the reasons for the denial by the Board and that statement is memorialized by the transcript, we conclude that a "written statement" has been entered into the record as required by OAR 255-15-010(2).[1]

■    Next, petitioner argues that OAR 255-15-010(2) violates Article I, sections 10 and 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. Article I, section 10, provides, in part:

> "No *court* shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property or reputation." (Emphasis supplied.)

Article I, section 11, provides, in part:

> "In all *criminal prosecutions*, the *accused* shall have the right * * * to meet the witnesses face to face[.]" (Emphasis supplied.)

---

[1] OAR 255-15-010 provides, in part:

"(1)  The records of the Board of Parole shall be disclosed to any person or agency unless disclosure would:

"* * * * *

"(c)  * * * endanger the inmate or other persons; or

"(d)  Compromise the privacy of the inmate or another person[.]

"* * * * *

"(2)  When disclosure of information is denied to a prisoner a written statement of the reasons for denial must be entered into the record for review by the Attorney General and the courts only."

The Sixth Amendment provides, in part:

"In all *criminal prosecutions, the accused* shall enjoy the right * * * to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him[.]" (Emphasis supplied.)

None of these provisions extends protection to petitioner in this case. Section 10 does not apply, because a prison term hearing is an administrative hearing conducted by the Board, not by a court of law. *See Rise v. Board of Parole*, 304 Or 358, 389, 745 P2d 1210 (1987). Section 11 and the Sixth Amendment are also inapplicable, because petitioner is no longer an "accused" involved in a criminal prosecution. Rather, he has been tried and convicted of a crime before his parole hearing. At the parole hearing, the Board determines the length of actual prison time he will serve. No constitutional right under those provisions is implicated.

■    Finally, petitioner argues that his due process rights under the Fourteenth Amendment have been violated, because he has been "deprived of the necessary information as to the nature and cause of the accusations in the 'confidential' letters * * * and has also been denied the right to confront the witnesses face to face who wrote the letters."

In *Greenholtz v. Inmates of Nebraska Penal & Correction Complex*, 442 US 1, 99 S Ct 2100, 60 L Ed 2d 668 (1979), the United States Supreme Court provided guidelines for determining what process is due in parole release determinations. Initially, the Supreme Court said:

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: '[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.'" 442 US at 7 (quoting *Meachum v. Fano*, 427 US 215, 224, 96 S Ct 2532, 49 L Ed 2d 451 (1976)).

However, the Court said that a protected liberty interest can be created by statute if the words and structure of the statute create a legitimate expectation of parole. The Court then

noted that the Nebraska statute was unique in that it mandated the Board to release an eligible prisoner unless it found one of four reasons to deny release.[2] Based on its language and structure, the Court held that the statute created an expectation and, therefore, some amount of process was due. Ultimately, the Court held:

> "The Nebraska [parole release] procedure affords an opportunity to be heard, and when parole is denied, it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under the circumstances. The Constitution does not require more." 442 US at 16.

Applying Oregon law, the court in *Pedro v. Oregon Parole Bd.*, 825 F2d 1396 (9th Cir 1987), held that the petitioner had been afforded sufficient due process in a parole board hearing. Relying on *Greenholtz v. Inmates of Nebraska Penal & Correction Complex, supra*, the court held:

> "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists. The petitioner in the instant case had a hearing with written advance notice of the date and time, she had an opportunity to be heard, she was represented by a paralegal, she had access to all materials considered by the Board, and she submitted materials for the Board's consideration. * * * Under *Greenholtz*, therefore, we conclude that the petitioner received all the process due." 825 F2d at 1399. (Citation omitted.)

*See also Jancsek v. Oregon Bd. of Parole*, 833 F2d 1389 (9th Cir 1987).

---

[2] The Nebraska statute provides:

"Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:

"(a) There is substantial risk that he will not conform to the conditions of parole;

"(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

"(c) His release would have a substantially adverse effect on institutional discipline; or

"(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date." Neb Rev Stat § 83-1, 114(1) (1976).

We turn now to the precise question of whether due process requires more than OAR 255-15-010 provides inasmuch as the parole procedure creates a legitimate expectation of parole. Due process is a flexible concept and

> "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 US 886, 895, 81 S Ct 1743, 6 L Ed 2d 1230 (1961).

The government function of making parole release determinations is necessarily discretionary. However, administrative rules ensure that such discretion is not abused. OAR 255-35-013 requires the Board to make findings concerning the crime severity rating, the prisoner's history/risk assessment score, the matrix range, and aggravating and mitigating factors. In order for the Board to carry out its mandated role, there may be a need for confidentiality regarding the information submitted to the Board. Otherwise, the Board may be deprived of information that is critical to its decisionmaking process because of the possibility of reprisal by inmates against informants. OAR 255-15-010 is an attempt to balance the interest that the Board has in such information with the interest that prisoners have in being released before the end of their prison sentences. To that end, the rule requires disclosure of all information before the Board to any person unless the disclosure would "endanger the inmate or other persons," or "compromise the privacy of the inmate or another person."

Balancing the state's interests with a prisoner's interest in early release, we hold that the rule affords sufficient due process. Under the rules of the Board, petitioner received advance written notice of the hearing, submitted materials for the Board's determination, and had an opportunity to be heard during the hearing. Although he was denied access to letters that the Board deemed confidential because of the reasons specified in the rule, we think that is a limitation that comports with due process because of the interest of the state in protecting the physical safety and

privacy interest of inmates and informants. Any additional disclosure could put those informants or petitioner at risk.[3]

Petitioner's remaining assignments of error do not require discussion.

Affirmed.

---

[3] Petitioner relies on *Zimmerlee v. Keeney*, 831 F2d 183 (9th Cir 1987), in support of his position. In that case, the court held that due process in a prison disciplinary hearing is satisfied when the record contains some factual information from which the disciplinary committee can reasonably conclude that the information was reliable. We note that the consequence of a prison disciplinary hearing may be increased severity in incarceration, and that more process may be due than in a parole release hearing in which a prisoner has no right to an early release. Nonetheless, we have examined the confidential information in this record and are satisfied that it meets any concerns about reliability.