Argued and submitted October 30, 1995, affirmed January 3, petition for review denied April 2, 1996 (323 Or 114)

# STATE OF OREGON,
*Respondent,*

*v.*

# LARRY ROBERT PHILLIPS,
*Appellant.*

## (TC94-13209; CA A87212)

909 P2d 882

James Patrick McHugh, Jr., argued the cause and filed the brief for appellant.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

Defendant appeals from the denial of his pretrial motion to dismiss criminal charges against him on the grounds of double jeopardy. We affirm.

On September 28, 1994, defendant was arrested for driving under the influence of intoxicants (DUII). He was taken to the police station, where he submitted to a breath test that showed that he had a blood alcohol content of .177 percent. Before his release from custody, defendant was given written notice that the Driver and Motor Vehicle Services Branch of the Department of Transportation (DMV) intended to suspend his driving privileges for having a blood alcohol content of .08 percent or greater. ORS 813.100. Defendant requested a hearing, which was held October 19, 1994, following which his driving privileges were suspended for one year. ORS 813.410; ORS 813.430.

Subsequently, the state charged defendant with the crime of driving under the influence of intoxicants. ORS 813.010. His pre-trial motion to dismiss the complaint contended that the double jeopardy clauses of the Oregon and United States Constitutions barred the state from prosecuting him for DUII after it had suspended his driving privileges in the DMV hearing.[1] The trial court denied his motion and defendant was convicted after a trial on stipulated facts. The court entered its judgment on January 18, 1995, sentencing defendant to 168 hours in jail and 24 months probation, suspending his driving privileges for three years, and imposing fines and assessments.

On appeal, defendant relies on *United States v. Halper*, 490 US 435, 109 S Ct 1892, 104 L Ed 2d 487 (1989), and its progeny for his contention that the prosecution for

---

[1] Article I, section 12, of the Oregon Constitution provides:

"No person shall be put in jeopardy twice for the same offence (sic), nor be compelled in any criminal prosecution to testify against himself."

The Fifth Amendment to the United States Constitution provides, in part:

"[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]"

The Fifth Amendment's double jeopardy clause is applicable to the states through the due process clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 US 784, 794, 89 S Ct 2056, 23 L Ed 2d 707 (1969).

driving under the influence of intoxicants, after the suspension of his driving privileges by DMV, constituted a second punishment for the same offense in violation of the Fifth Amendment right to be free from double jeopardy.[2] The state responds that, because the administrative suspension of driving privileges is remedial, it does not constitute punishment and, therefore, does not give rise to a double jeopardy claim.

■ The Double Jeopardy Clause provides protection in three situations: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *Halper*, 490 US at 440. In this case, defendant contends that he has been twice punished for the same offense, because the administrative suspension of his driving privileges constitutes punishment.

■ The United States Supreme Court has set forth a three-prong test to determine whether the Double Jeopardy Clause bars the state from prosecuting a criminal action after civil sanctions have been imposed: whether the sanctions are imposed for the same alleged conduct; whether the civil and criminal sanctions are imposed in separate proceedings; and whether the separate civil sanction constitutes "punishment" for double jeopardy purposes. *Montana Dept. of Revenue v. Kurth Ranch*, 511 US ___, 114 S Ct 1937, 128 L Ed 2d 767 (1994).

In this case, it is not disputed that defendant's license suspension and the subsequent criminal penalty resulted from the same conduct or offense, and that the license suspension hearing and the criminal prosecution represent separate proceedings. The sole issue is whether imposition of the administrative license suspension constitutes "punishment" for double jeopardy purposes.

We have held that suspension of driving privileges is civil and administrative, rather than criminal, in nature. *Schreiber v. MVD*, 104 Or App 656, 657, 802 P2d 706 (1990),

---

[2] Although defendant alleged a violation of Article I, section 12, of the Oregon Constitution, on appeal both he and the state base their arguments solely on the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. We therefore limit our analysis to federal law. *See State v. Foley*, 125 Or App 423, 431, 865 P2d 465 (1993).

*rev den* 311 Or 266 (1991); *State v. Neighbors*, 55 Or App 882, 884, 640 P2d 643, *rev den* 293 Or 340 (1982). However, in *Halper*, the Supreme Court held that "the labels 'criminal' and 'civil' are not of paramount importance" in determining whether a sanction constitutes punishment for double jeopardy purposes. 490 US at 447-48. Rather, the focus is on "the purposes actually served by the sanction in question[.]" *Id.* at 447 n 7. According to the Court, under the Double Jeopardy Clause,

> "a defendant who has already been punished in a criminal proceeding may not be subjected to an additional civil sanction *to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.*" *Id.* at 449. (Emphasis supplied.)

Applying that reasoning to the facts in *Halper*, the Court concluded that a $130,000 civil penalty, imposed after conviction in a criminal case for which the defendant was imprisioned for two years and fined $5000, was punishment. However, the Court cautioned that its decision was limited to the "rare case" in which a civil fixed-penalty provision "bears no rational relation to the goal of compensating the Government for its loss." *Id.*

Five years later, in *Austin v. United States*, 509 US ____, 113 S Ct 2801, 125 L Ed 2d 488 (1993), the Court addressed the question of whether a civil forfeiture was punishment for purposes of the Eighth Amendment's Excessive Fines Clause.[3] In that case, the government sought forfeiture of the defendant's mobile home and auto body shop under 21 USC section 881 (a)(4), which authorizes forfeiture of conveyances and real property used to commit or facilitate the commission of drug offenses. The Court did not follow the *Halper* analysis of inquiring into whether the forefeiture could be construed as compensating the government for its loss. Rather, it focused on the entire scope of the forfeiture statute, examining the historical understanding of forfeiture, the culpability of the property owner whose property was forfeited, and evidence that the intent of the statute was to deter and punish. *Id.* at ____, 113 S Ct at 2812 & n 14. It

---

[3] The Eighth Amendment to the United States Constitution provides:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

concluded that the forfeiture statute constituted " 'payment to a sovereign as punishment for some offense,' " in violation of the Excessive Fines Clause. *Id.* at ____ n 14, 113 S Ct at 2816.

Most recently, in *Kurth Ranch*, the Court examined whether a Montana tax on the possession of illegal drugs, imposed after criminal penalties for the same conduct, constituted punishment under the Double Jeopardy Clause. The Court decided that the method prescribed in *Halper* for determining whether a civil penalty is remedial or punitive does not apply in cases involving a tax statute. It noted that "neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax a form of punishment." 511 US at ____, 114 S Ct at 1946. Although the Court concluded that Montana's drug tax was "a concoction of anomalies" that departed too drastically from normal revenue laws to escape characterization as punishment, it stated that even where civil sanctions carry with them "an obvious deterrent purpose," such features "in and of themselves do not necessarily render the [penalty] punitive." *Id.* at ____, 114 S Ct at 1946-47, 1948.

In this case, defendant's driving privileges were suspended for one year pursuant to ORS 813.100. According to defendant, *Halper, Austin* and *Kurth Ranch* "make it clear that, at a minimum, federal law bars prosecution of this case," because license suspension serves to deter people from driving while intoxicated. Consequently, he contends, *Schreiber* and *Neighbors* "no longer have any vitality." The state responds that the administrative suspension of a driver's license is a remedial action prompted by the need to protect the public by removing dangerous drivers from the road as expeditiously as possible and that defendant's reliance on *Halper* and its progeny is misplaced. We agree. *Halper, Austin* and *Kurth Ranch* indicate only that, if deterrence alone is the goal of a civil penalty, that penalty constitutes punishment for purposes of double jeopardy.

While imposition of the one-year suspension of his driving privileges may carry "the sting of punishment" from defendant's perspective, the determination of whether a particular civil sanction amounts to punishment for double

jeopardy purposes is not made from the defendant's perspective. *Halper*, 490 US at 447 n 7. Instead, "it is the purposes actually served by the sanction in question * * * that must be evaluated" to determine if the sanction is *"so divorced from any remedial goal* that it constitutes 'punishment' [under] double jeopardy analysis." *Id.* at 443, 447 n 7. (Emphasis supplied.)

The purpose of the Oregon Vehicle Code, including ORS 813.100, is:

"(a)   To provide maximum safety for all persons who travel or otherwise use the public highways of this state;

"(b)   To deny the privilege of operating motor vehicles on the public highways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state, the orders of her courts and the statutorily required acts of her administrative agencies[.]" ORS 801.020(11).

That purpose is unquestionably remedial in nature. In order to carry out the purposes of the code, the legislature has enacted a comprehensive program of licensing and license suspension and revocation. The legislature has also determined that a person with a blood alcohol content of .08 or greater who drives a vehicle poses a danger to the public welfare and has prohibited that conduct. ORS 813.010(a). Suspending the driving privileges of drivers who drive while intoxicated is a method of removing the danger posed by intoxicated drivers. Even accepting defendant's argument that the threat of administrative suspension of a driver's license may serve to deter drivers from driving under the influence or refusing the breath test, that deterrent consequence does not alter the remedial nature of the statutory scheme. Neither does it convert administrative license suspension into punishment for purposes of the Double Jeopardy Clause. *See Helvering v. Mitchell*, 303 US 391, 399, 58 S Ct 630, 82 L Ed 917 (1938) ("Remedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted.").

■ Our conclusion that administrative suspension of a driver's license for driving under the influence of intoxicants is remedial notwithstanding its deterrent consequences is

consistent with other state appellate courts that have been presented with this issue. *See State v. Zerkel*, 900 P2d 744, 757 (Alaska App 1995); *State v. Savard*, 659 A2d 1265, 1268 (Me 1995); *State v. Young*, 3 Neb App 539, 530 NW2d 269, 278 (1995); *State v. Strong*, 158 Vt 56, 605 A2d 510, 513 (1992).

Because the one-year suspension of defendant's driving privileges serves "legitimate nonpunitive governmental objectives," *Halper*, 490 US at 448, his subsequent prosecution for driving under the influence of intoxicants was not barred by the Double Jeopardy Clause.

Affirmed.