Argued and submitted December 19, 2000, affirmed August 15, 2001

TODD BRADLEY MANNELIN,
*Appellant,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES BRANCH (DMV),
*Respondent.*

99C-12847; A108316

31 P3d 438

Stephen A. Houze argued the cause and filed the brief for appellant.

Brendan C. Dunn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

At issue in this case is whether the Driver and Motor Vehicle Services Branch of the Oregon Department of Transportation (DMV) may apply retroactively a statute that increases from five to eight years the period of driver's license revocation that may be imposed for the commission of certain crimes in connection with the use of a motor vehicle. The trial court held that DMV lawfully may apply the statute, and we agree.

The relevant facts are not in dispute. On August 8, 1993, petitioner crashed his automobile into a tree, killing his passenger. Petitioner was under the influence of alcohol at the time. He entered into a plea bargain in the criminal proceeding that ensued, the terms of which required him to plead guilty to reckless driving, driving under the influence of intoxicants, third-degree assault, and second-degree manslaughter. In return, the state agreed to recommend to the court a sentence of 20 months' imprisonment, with three years of post-prison supervision, five years of probation, a fine, and a five-year suspension of his driving privileges. On January 21, 1994, the court accepted petitioner's plea and imposed the recommended sentence, except that, in accordance with the version of ORS 809.410(1) then in effect, it ordered petitioner's driving privileges revoked—not suspended—for five years.[1] DMV told him that, if he complied with all conditions of his sentence, he could apply for reinstatement of his driving privileges in five years.

In 1995, while petitioner was serving his sentence, the legislature amended ORS 809.410(1) to extend the period of driver's license revocation from five to eight years.[2] The

___

[1] ORS 809.410(1) (1987) provided, in pertinent part:

"Any degree of murder, manslaughter, criminally negligent homicide or assault resulting from the operation of a motor vehicle constitutes grounds for revocation of driving privileges. The following apply to this subsection: ·

"(a) Upon receipt of a record of conviction for an offense described in this subsection, the division shall revoke the driving privileges or right to apply for driving privileges.

"(b) * * * The period of revocation shall be for a period of:

"(A) Five years from the date of revocation * * *."

[2] ORS 809.410(1) now provides, in pertinent part:

amendments expressly apply to persons in prison or on parole, post-prison supervision, or probation as of their effective date. Or Laws 1995, ch 661, § 3.[3]

When petitioner completed his sentence and reapplied for a driver's license, DMV did not apply the 1995 amendments to him. Instead, on January 20, 1999, it reinstated his driving privileges. Approximately two weeks later, however, it notified him that the 1995 amendments applied to him and that, pursuant to those amendments, it intended to revoke his driving privileges for an additional three years.

Petitioner sought administrative review of the revocation, and DMV issued an order upholding it. Petitioner then sought judicial review of that order, raising a number of common-law, state and federal statutory and constitutional challenges to the retroactive application of the 1995 amendments. Both petitioner and DMV moved for summary judgment. The trial court denied petitioner's motion, granted DMV's, and entered judgment affirming the DMV order.

■ On appeal, petitioner assigns error to the denial of his summary judgment motion and to the entry of summary judgment in favor of DMV. On review of cross-motions for summary judgment, we determine whether there are any disputed issues of material fact and whether either party is entitled to judgment as a matter of law. *Hood Technology Group v. OR-OSHA*, 168 Or App 293, 295, 7 P3d 564 (2000).

---

"Any degree of murder, man laughter or criminally negligent homicide resulting from the operation of a motor vehicle and assault in the first degree resulting from the operation of a motor vehicle constitute grounds for revocation of driving privileges. The following apply to this subsection:

"(a) Upon receipt of a record of conviction for an offense described in this subsection, the department shall revoke the driving privileges or right to apply for driving privileges.

"(b) A person whose driving privileges or right to apply for driving privileges are revoked under this subsection may apply for reinstatement of driving privileges eight years from the date the person is released from incarceration for the offense, if the sentence for the offense includes incarceration. If the sentence does not include incarceration, the person may apply for reinstatement eight years from the date the department revoked the privileges or right to apply for privileges under this subsection."

[3] In 1999, the legislature further amended ORS 809.410 to provide that persons on parole, post-prison supervision, or probation when the 1995 amendments went into effect may apply to reinstate their driving privileges eight years after the date of original revocation, not the date of release. Or Laws 1999, ch 796, §§ 1, 5.

We begin with petitioner's nonconstitutional contentions before proceeding to his state and federal constitutional arguments, respectively. *State v. Moylett*, 313 Or 540, 545, 836 P2d 1329 (1992).

Petitioner first argues that DMV should be estopped from retroactively extending the revocation of his driving privileges an additional three years. According to petitioner, the sentencing judge, petitioner's parole officer, and DMV each told him that his driving privileges would be revoked for five years. Implicit in that advice, he argues, is the assurance that the revocation period would not be extended. DMV argues that any representations that it may have made are insufficient to estop it from performing an obligation required by statute. We agree with DMV.

Equitable estoppel may apply to government agencies under certain circumstances. Those circumstances are "rare" and "should be applied cautiously." *Employment Div. v. Western Graphics Corp.*, 76 Or App 608, 612, 710 P2d 788 (1985). At a minimum, it must be shown that the agency knowingly made a false or misleading statement on which an individual justifiably and detrimentally relied. *Coos County v. State of Oregon*, 303 Or 173, 180-81, 734 P2d 1348 (1987). The false or misleading statement must be one of "existing material fact and not of intention, nor may it be a conclusion from facts or a conclusion of law." *Id.; see also Welch v. Washingtcr County*, 314 Or 707, 715-16, 842 P2d 793 (1992) (same).[4] In the absence of statutory authority, statements of one government agency cannot bind another. *Rise v. Board of Parole*, 304 Or 385, 390-91, 745 P2d 1210 (1987). Moreover, statements by a state agency "may not bind the state to any arrangement that contravenes the statutes." *Does 1 - 7 v. State of Oregon*, 164 Or App 543, 560, 993 P2d 822, *rev den*

---

[4] Petitioner argues that a false or misleading statement is not always required. In support of that argument, he cites *Pilgrim Turkey Packers v. Dept. of Rev.*, 261 Or 305, 493 P2d 1372 (1972). In that case, a taxpayer had been misled by the Department of Revenue about where to file certain tax forms. The court held that the misleading instructions were sufficient to invoke the doctrine of equitable estoppel. *Id.* at 309. The misleading instructions arguably amounted to conclusions of law, although—as DMV argues—they also could be viewed as assertions of present fact. In either event, the case clearly has been superseded by subsequent authority that categorically, and repeatedly, requires a misstatement of existing material fact. *E.g., Welch*, 314 Or at 715-16; *Coos County*, 303 Or at 181.

330 Or 138 (1999); *see also Bankus v. City of Brookings*, 252 Or 257, 260, 449 P2d 646 (1969) ("[M]andatory requirements of an ordinance specifically stated cannot be waived. * * * Nor may a city be estopped by the acts of a city official who purports to waive the provisions of a mandatory ordinance or otherwise exceeds his authority."); *Harsh Investment Corp. v. State Housing Division*, 88 Or App 151, 158, 744 P2d 588 (1987), *rev den* 305 Or 273 (1988) ("Those who deal with state officers must know the extent of their authority and cannot claim by estoppel what they could not receive by contract.").[5] In particular, a state agency cannot bind the legislature to refrain from changing existing law. *Does 1 - 7*, 164 Or App at 560.

■ ■ In this case, petitioner's claim of estoppel against DMV plainly fails as a matter of law. To begin with, any statements of the trial judge and the parole officer cannot bind DMV. *Rise*, 304 Or at 390-91. DMV's statements made at the time of sentencing likewise are insufficient. They were conclusions of law concerning the effect of the statutes in effect at the time. Indeed, given the state of the law at the time, DMV's advice was not misleading; it was entirely accurate. Petitioner's argument that the advice contained an implicit promise that the law would not change is neither a statement of existing fact nor a promise that lawfully may be enforced. *Does 1 - 7*, 164 Or App at 560.

■ Petitioner argues that, even if the statements made at the time of sentencing cannot support his claim of estoppel, DMV's reissuance of his license in 1999 can. According to petitioner, the reissuance amounted to an implicit representation of his entitlement to reapply at that time. At that point, he argues, DMV should have known that the 1995 amendments applied, and, given that he detrimentally relied

---

[5] Petitioner argues that *Bankus* and similar authorities are distinguishable because they involved the misleading statements of only a single government official, while, in this case, he relied on the misleading statements of multiple officials. Petitioner cites no authority for the distinction that he advances. Nor does he offer any reason why the number of officials making the misleading statements would be material. Indeed, petitioner makes no effort to distinguish *Clackamas County v. Emmert*, 14 Or App 493, 499, 501-03, 513 P2d 532 (1973), in which this court applied *Bankus* in rejecting a claim of estoppel on the basis of representations by multiple government officials.

on the reissuance—however briefly—DMV should not now be entitled to revoke it.

At the outset, we observe that petitioner first advanced that argument on appeal, during oral argument. Nothing in his brief mentions the 1999 act of reissuing his license as the basis for his claim of estoppel. In fact, nothing in the summary judgment record suggests that he made that argument to the trial court, either. To the contrary, his summary judgment affidavit complains only that "[a]t the time of the original revocation," DMV made certain representations to him about the period of license revocation on which he detrimentally relied.

At all events, the argument fails as a matter of law. The implicit representation, if any, amounted to a legal conclusion as to the effect of the 1995 amendments and therefore cannot provide the basis for estopping an agency's future conduct. *Coos County*, 303 Or at 181. Moreover, as we have noted, an agency's representations cannot, through estoppel, force the agency to act contrary to statute. *Bankus*, 252 Or at 260; *Does 1 - 7*, 164 Or App at 560. In this case, it is undisputed that ORS 809.410(1) expressly requires DMV to revoke petitioner's license. DMV could not lawfully choose to ignore the statute. Therefore, it cannot lawfully be required to do so through estoppel. *Harsh Investment Corp.*, 88 Or App at 158.

Petitioner next argues that the retroactivity provisions of ORS 809.410(1) violate the state constitutional prohibition against *ex post facto* laws. He argues that the revocation of his driving privileges amounts to a punishment and that the retroactive increase in the period of revocation therefore amounts to an unconstitutional increase in the punishment meted out for his crimes. DMV argues that petitioner's argument rests on a false premise, namely, that the revocation of driving privileges amounts to punishment. According to DMV, revocation of driving privileges is not punitive, but rather is remedial in nature. Therefore, DMV concludes, any increase in the period of revocation does not implicate the *ex post facto* prohibition. We agree with DMV.

Article I, section 21, of the Oregon Constitution, provides that "[n]o *ex post facto* law * * * shall ever be passed."

The Oregon courts have concluded that the state *ex post facto* clause was intended to have the same historical scope as its federal counterpart in Article I, section 10, of the federal constitution. That is to say, in accordance with federal precedent that existed as of 1857, the Oregon *ex post facto* clause applies to:

"(1) laws that punish acts that were legal before the enactment of those laws; (2) laws that impose greater or additional punishment than that available before the enactment of those laws; and (3) laws that deprive the defendant of a defense."

*State v. Cookman*, 324 Or 19, 31, 920 P2d 1086 (1996).[6] In this case, petitioner argues that the retroactivity provisions of ORS 809.410(1) implicate the second of the three categories. The determinative inquiry, therefore, is whether the statute imposes "greater or additional punishment" on petitioner.

■ Whether a given statute imposes greater or additional "punishment" for *ex post facto* purposes involves a two-step inquiry. The first step is to determine whether the legislative purpose of the statute was punitive. If so, that ends the matter. If not, the second step is to determine whether any punitive effect of the statute is so great as to negate the legislature's nonpunitive intention. *State v. Matthews*, 159 Or App 580, 585, 978 P2d 423 (1999) (quoting *Gress v. Board of Parole*, 143 Or App 7, 15-16, 924 P2d 329, *mod* 144 Or App 375, 927 P2d 138 (1996), *rev dismissed* 326 Or 68, *vacated and dismissed* 152 Or App 491, 950 P2d 418 (1997)); *see also Frey v. Board of Parole*, 152 Or App 462, 464, 950 P2d 418, *rev den* 327 Or 173 (1998) (same).[7] In weighing any punitive effect against the nonpunitive purpose of a statute, we have adopted a multi-factor analysis from federal constitutional case law, in particular, *Kennedy v. Mendoza-Martinez*, 372 US 144, 168-69, 83 S Ct 554, 9 L Ed 2d 644 (1963). That

---

[6] In *State v. Fugate*, 332 Or 195, 213, 26 P3d 802 (2001), the Supreme Court recognized a fourth category, that is, laws that "retrench the rules of evidence so as to make conviction more easy." That fourth category is not pertinent to the disposition of the issues in this case.

[7] Petitioner argues that the two-part inquiry of *Matthews* is simply wrong. He does not explain why. Nor does he offer any analysis of his own. We therefore decline without further discussion to reconsider our decision in that case.

analysis requires us to evaluate (1) whether the burden involves an "affirmative disability or restraint;" (2) whether the burden imposed historically has been considered punishment; and (3) whether the burden is "excessive in relation to its purported nonpunitive purpose." *Matthews*, 159 Or App at 588-89.

We begin with the intended purpose of ORS 809.410(1), as amended in 1995. The immediate text of the statute does not contain an express declaration of punitive or remedial intent. It simply provides for a mandatory revocation of driving privileges for the commission of certain crimes resulting from the operation of a motor vehicle. However, the legislature has expressed more generally the purpose of the Oregon Vehicle Code, of which ORS 809.410(1) is a part. ORS 801.020(11)(a) declares that the overriding policy of the state is "[t]o provide maximum safety for all persons who travel or otherwise use the public highways of this state." More to the point, the legislature further declared that it is the policy of the state

> "[t]o deny the privilege of operating motor vehicles on the public highways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state, the orders of its courts and the statutorily required acts of its administrative agencies."

ORS 801.020(11)(b). In *State v. Phillips*, 138 Or App 468, 474, 909 P2d 882, *rev den* 323 Or 114 (1996), we held that "[t]hat purpose is unquestionably remedial in nature" and that Oregon's comprehensive program of licensing and license suspension and revocation is designed to achieve that remedial purpose.[8]

The legislative history of the 1995 amendments to ORS 809.410(1) itself bears out what the foregoing sources more generally suggest. The amendments were intended to change existing law so that the period of revocation did not run while offenders were serving time in state correctional

---

[8] *Phillips* was a double jeopardy, not an *ex post facto*, case. It is arguable that what is "punishment" for the purposes of one constitutional clause is not necessarily "punishment" for the purposes of another. At the very least, however, it is relevant that the courts regard a statute as remedial for other, similar, purposes.

facilities. According to the proponents of the legislation, it served no purpose to revoke the license of an offender in prison. *See, e.g.,* tape recording, Senate Committee on Rules and Elections, Tape 85, Side A, HB 3060, May 30, 1995 (testimony of Steve Doell). The amendments also were intended to increase the period of revocation for certain crimes committed by the operation of a motor vehicle.

During the floor debates in the House of Representatives, the question arose whether the amendments could be construed as punitive in nature and therefore contrary to the *ex post facto* clause of the state constitution. A number of members rose in response to make the legislature's nonpunitive intentions explicit. *See, e.g.,* tape recording, House of Representatives floor debates, HB 3060, June 8, 1995, Tape 251, Side B (statement of Rep. Bryan Johnston) (the legislature is "entitled to pass laws about motor vehicles that increase safety and, in this way, that's what we're doing here * * *. Our problem is to have safe streets. This is a regulatory action."); tape recording, House of Representatives floor debates, HB 3060, June 8, 1995, Tape 251, Side B (statement of Rep. Robert Tiernan) (amendments are not punitive, but rather are regulatory, designed "to protect the public by keeping people who are unfit from driving on the highways of this state"); tape recording, House of Representatives floor debates, HB 3060, June 8, 1995, Tape 251, Side B (statement of Rep. Mike Fahey) (explaining that, under applicable case law, the loss of driving privileges presents no *ex post facto* problem "if the suspension of those privileges was done with regulatory rather than punitive motive. And that's what this is, just regulatory."). Similar statements were made on the Senate floor as well. *E.g.,* tape recording, Senate floor debates, HB 3060, June 6, 1995, Tape 210, Side A (statement of Sen. Randy Miller) (the amendments address "a regulatory concern with respect to those who are safe behind the wheel and concern for the public as opposed to some punitive measure"). There is no statement of any legislator to the contrary.[9]

---

[9] Petitioner's argument to the contrary is based on the testimony of a representative of DMV at a Senate committee hearing on certain additional amendments enacted four years later. According to petitioner, the witness testified that, as she understood it, one of the purposes of the 1995 amendments was to "make it a little harsher sanction" for certain crimes committed while operating a motor vehicle. Tape recording, Senate Committee on Transportation, April 9, 1999, Tape 53, Side A (testimony of Kelly Taylor). To begin with, the testimony of anyone four years

As we have noted, that the legislature did not intend the 1995 amendments to be punitive does not end the inquiry. We still must determine whether any punitive effects of the amendments outweigh their nonpunitive purposes. The first consideration is whether ORS 809.410(1) imposes an "affirmative disability or restraint." As DMV points out, the statute does not interfere with any of the interests that usually are implicated in *ex post facto* cases, such as freedom of movement from one place to another, freedom to engage in a particular profession, or freedom from police scrutiny, control, or monitoring. *See, e.g., Matthews*, 159 Or App at 590 (examining whether sex offender registration interfered with those interests). Nevertheless, it must be acknowledged that, to the extent that the statute prohibits petitioner from driving a motor vehicle, it at least imposes a restraint on the method by which he may travel from place to place.

Next, we determine whether any such burden or restraint historically has been regarded as punishment. The answer to that question is not difficult. Courts traditionally have regarded the suspension and revocation of a driver's license as nonpunitive. *See, e.g., Burbage v. Dept. of Motor Vehicles*, 252 Or 486, 491, 450 P2d 775 (1969) (suspension proceeding is nonpunitive); *State v. Robinson*, 235 Or 524, 532, 385 P2d 754 (1963) ("nor do we believe that the revocation of a driver's license is punishment or is intended to be punishment"); *Phillips*, 138 Or App at 474 (suspension of driver's license is remedial).

Finally, we evaluate whether any punitive effect is excessive in relation to the statute's nonpunitive purpose. Once again, the answer is not difficult. As we have noted, the limited disability or restraint imposed by the revocation of a driver's license historically has not been regarded as punishment at all. But even assuming some limited punitive effect, it does not outweigh the substantial and legitimate interest

---

after enactment is not cognizable evidence of what the legislature intended four years earlier. *See United Telephone Employees PAC v. Secretary of State,* 138 Or App 135, 139, 906 P2d 306 (1995) ("Subsequent statements by legislators are not probative of the intent of statutes already in effect."). Moreover, the testimony consists of the views of a nonlegislator witness, which often offers little, if any, insight into the intentions of the enacting Legislative Assembly. *See State v. Guzek,* 322 Or 245, 260, 906 P2d 272 (1995) (cautioning against reliance on testimony of nonlegislator witnesses).

of the public in assuring safe travel on the state's highways. It must be remembered that the consequence of revocation follows the commission of acts by the operation of a motor vehicle that pose a serious threat to public safety—murder, manslaughter, criminally negligent homicide, and first-degree assault. ORS 809.410(1). We cannot say, in light of the potential danger to the public of permitting persons who commit those acts to continue to drive, that imposing a limited period of revocation is "excessive." We therefore conclude that ORS 809.410(1) does not violate the state *ex post facto* clause.

Petitioner next argues that, by extending the driver's license revocation period from five to eight years, ORS 809.410(1) violates the double jeopardy clause of the Oregon Constitution. According to petitioner, the term "jeopardy" as used in Article I, section 12, of the Oregon Constitution, protects from "*any* form of loss," not merely those "narrow kinds of loss traditionally associated with criminal convictions." (Emphasis in original.) Because the extension of the period of revocation of his driving privileges is such a loss, he concludes, ORS 809.410(1) is unconstitutional. DMV argues that the double jeopardy clause prohibits only multiple "punishments" for the same offense. Because the revocation of driving privileges is not a punishment, DMV concludes, altering the period of revocation cannot be a violation of the double jeopardy clause. DMV is correct.

In *Phillips*, we held that the state's system of administrative suspension and revocation of a driver's license is remedial, and not punitive, in nature. In consequence, we held that the imposition of a suspension in addition to the imposition of criminal sanctions does not violate a driver's rights under the double jeopardy clause. 138 Or App at 475. Petitioner's only argument to the contrary is that *Phillips* does not control, because it involved a claim under the federal double jeopardy clause only.

Petitioner is correct that we applied essentially federal constitutional analysis in determining the meaning of the state double jeopardy clause. This court, in fact, routinely has assumed that the analysis under the state and federal double jeopardy clauses is the same, particularly when the

parties do not suggest any difference in analyzing claims arising under the state clause and its federal counterpart. *See, e.g., Umatilla County v. $18,005 in U.S. Currency*, 142 Or App 513, 516, 921 P2d 426, *rev den* 324 Or 395 (1996). In so doing, we have followed familiar Supreme Court practice. *See, e.g., Dept. of Transportation v. Lundberg*, 312 Or 568, 572 n 4, 825 P2d 64, *cert den* 506 US 975 (1992) (when parties do not offer an alternative analysis under the Oregon Constitution, courts may assume that analysis under the state and federal constitutions is the same). In this case, petitioner has offered no alternative analysis under the Oregon Constitution, save his unadorned conclusion that the state double jeopardy clause should not be limited to successive "punishments." *Phillips* therefore controls.

In the alternative, petitioner argues that *Phillips* was incorrectly decided even as a matter of federal law. According to petitioner, *Phillips* relied on *United States v. Halper*, 490 US 435, 109 S Ct 1892, 104 L Ed 2d 487 (1989), which the United States Supreme Court since has abandoned, and, under the proper analysis, the revocation of driving privileges should be regarded as punishment for federal double jeopardy purposes. DMV acknowledges that, in *Phillips*, we cited *Halper*, but it insists that the overruled decision was not central to our analysis and, in any event, even under the more current case law, revocation of driving privileges is not punishment that triggers the double jeopardy clause of either the state or federal constitution.

In *Halper*, the United States Supreme Court held that a civil fine for violating the Federal False Claims Act was punitive in nature, notwithstanding the fact that it was a civil—and not a criminal—penalty. In reaching that conclusion, the Court held that even civil penalties may trigger the double jeopardy clause of the federal constitution if the penalties are so overwhelmingly disproportionate to the injury caused that they could not fairly be said to serve *solely* a nonpunitive purpose. *Halper*, 490 US at 448-49.

In *Phillips*, the defendant argued that, under *Halper*, the suspension of his driving privileges amounted to punishment and that, as a result, once he had been suspended for driving while under the influence, he could not

subsequently be subject to criminal prosecution for the same offense without running afoul of state and federal double jeopardy prohibitions. *Phillips*, 138 Or App at 470-71. We noted that, indeed, *Halper* recognized that some civil penalties conceivably could be regarded as punishments for double jeopardy purposes if they are so disproportionate to the injury caused that they cannot fairly be said to be remedial. *Id.* at 472. However, we also noted that, in subsequent cases, the Supreme Court did not follow the same analytical approach that it applied in *Halper* and that the proper approach now appeared to require an examination of the challenged statutes as a whole, to determine whether their effect was to deter or to punish. *Id.* at 473-74. We did not apply the *Halper* test that penalties are punitive for double jeopardy purposes unless they are solely remedial in purpose and effect. Instead, we examined the relevant statutes and, by the usual methods of statutory construction, determined that the suspension of a driver's license is remedial in nature. We acknowledged that suspension may have some deterrent or punitive effect, but we nevertheless concluded that such effect was not so substantial as to outweigh the remedial nature of the statutory scheme. *Phillips*, 138 Or App at 474.

Meanwhile, in *Hudson v. United States*, 522 US 93, 118 S Ct 488, 139 L Ed 2d 450 (1997), the Supreme Court abandoned the "solely remedial" test of *Halper* in favor of an analysis that requires the courts to examine the whole statute to determine whether, as a matter of statutory construction, a penalty is punitive in purpose and effect. The Court held that deterrent or punitive effect is not dispositive, as it was in *Halper*, but instead is merely a factor to take into account in determining the purpose and effect of the challenged law. *Hudson*, 522 US at 101.

Thus, what the Supreme Court required in *Hudson* is essentially the analysis that we applied in *Phillips*. We find no reason to reconsider our decision in that case and, on that basis, reject petitioner's contention that ORS 809.410(1) violates the state double jeopardy clause.

■ Petitioner next contends that the application of the amended version of ORS 809.410(1) to him violates the state constitutional prohibition against impairment of contracts.

Petitioner suggests that he and the State of Oregon "entered into a binding contract" in connection with the negotiated plea of his criminal charges. The precise contours of his contract claim are difficult to discern, but, as best we can tell, he asserts that his plea agreement with the district attorney somehow precludes the application of ORS 809.410(1) to his case. The plea agreement with the district attorney, however, expressly provided that, in return for a plea of guilty to certain crimes, the district attorney would make a specific sentence recommendation, including a five-year driver's license suspension. Petitioner, in fact, pleaded guilty, and the district attorney made precisely the recommendation that the plea agreement required. The terms of the plea agreement having been completely performed, there remained no contractual rights for the amended version of ORS 809.410(1) to impair.

In a supplemental memorandum following oral argument, petitioner attempts to sidestep that conclusion by invoking an implied contract with the judge in the criminal trial. He suggests that, when the judge in the criminal trial approved the plea agreement, it became a "sentencing contract," the terms of which included revocation of driving privileges for a period of five years only. The argument is unavailing, however. At the least, it cannot be reconciled with the fundamental principle that government officials cannot bind future legislatures against amendments to existing law. *Does 1 - 7*, 164 Or App at 560. Thus, even assuming that the trial court's acceptance of the plea agreement amounted to an implicit assurance that the legislature would not later change the law, such an assurance would have been unenforceable. *Id.* We reject petitioner's contracts clause challenge without further discussion.

Petitioner next argues that the revocation of his driving privileges under the amended version of ORS 809.410(1) violates the federal *ex post facto* clause. Article I, section 10, of the federal constitution, provides that, "No state shall * * * pass any * * * *ex post facto* law." At least as to the analysis that is pertinent to this case, the Oregon courts have concluded that federal and state *ex post facto* analysis is identical. *Matthews*, 159 Or App at 585 n 5 (quoting *State v. Wille*, 317 Or 487, 502, 858 P2d 128 (1993)). Accordingly, for the

reasons already described with respect to petitioner's claim under the state *ex post facto* clause, his claim under the federal counterpart fails as well.

Petitioner also argues that the revocation violates the federal double jeopardy clause. As we have explained, however, in *Phillips*, we determined that the statutory program of suspension and revocation of driver's licenses is a remedial program that does not implicate the state or federal double jeopardy clause. We reject petitioner's argument without further discussion.

Petitioner's penultimate argument is that ORS 809.410(1) as amended violates Article I, section 10, of the federal constitution, which prohibits any state from passing a bill of attainder. A "bill of attainder" is a "law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of General Services*, 433 US 425, 468, 97 S Ct 2777, 53 L Ed 2d 867 (1977). Petitioner contends that he and others who committed the pertinent crimes have been legislatively "singled out, based *solely* on their past conduct" in committing those crimes and that the consequence of that singling out clearly is "punishment." (Emphasis in original.) DMV argues that the legislature has not improperly "singled out" anyone and that, in any event, the statute does not impose any punishment within the meaning of the bill of attainder clause. We agree with DMV.

First, ORS 809.410(1) does not improperly "single out" any person. The mere fact that a statute applies only to certain people, and not to others, does not render it a bill of attainder. As the Supreme Court explained in the *Nixon* decision, the prohibition against bills of attainder "surely was not intended to serve as a variant of the equal protection doctrine, invalidating every Act of Congress or the States that legislatively burdens some persons or groups but not all other plausible individuals." *Nixon*, 433 US at 471 (footnotes omitted). The specificity element of a bill of attainder claim is satisfied only when the person challenging it demonstrates that he or she has been targeted for illegitimate reasons. Thus, for example, in the *Nixon* case, the Court held that a statute that applied to the presidential papers of a single individual did

not satisfy the specificity requirement because, at the time of passage, only those papers had not yet been housed in functioning presidential libraries. *Id.* at 472. In this case, petitioner has made no effort to explain how ORS 809.410(1), in providing for revocation of the driving privileges of persons who have committed certain crimes, amounts to an illegitimate classification.

Second, ORS 809.410(1) does not legislatively determine the guilt of any person. It legislatively specifies a consequence of a determination of guilt by the ordinary judicial processes.

■ Third, the revocation of driving privileges is not punishment. The test for determining what amounts to punishment for bill of attainder purposes is essentially the same as the test for *ex post facto* and double jeopardy purposes. It requires an evaluation of whether the statute imposes a penalty that historically has been regarded as punishment, whether the statute reasonably can be said to further nonpunitive purposes, and whether the legislative record evinces an intent to punish. *Selective Svc. v. Minn. Pub. Int. Res. Gp.*, 468 US 841, 852, 104 S Ct 3348, 82 L Ed 2d 632 (1984). As we have noted above, revocation of driving privileges historically has been regarded as remedial, not punitive; the case law previously has recognized that the purpose of the statutory suspension and revocation program is essentially nonpunitive; and the legislative history of the current version of ORS 809.410(1) plainly evinces an intent to protect public safety, not to punish. We therefore conclude that ORS 809.410(1) does not violate the federal bill of attainder clause.

■ Finally, petitioner argues that the application of ORS 809.410(1) to his case violates due process in two respects. First, he argues that applying the statute to him is fundamentally unfair in light of DMV's assurances that his license would be suspended for only five years. According to petitioner, a showing of equitable estoppel necessarily establishes a due process violation. Even assuming for the sake of argument that petitioner is correct in the abstract, he does not prevail in this case because, as we have explained, there has been no showing of equitable estoppel. Second, he argues that due process requires specific performance of his plea

agreement. Once again, even if petitioner were correct that due process in some circumstances compels the performance of a plea agreement, in this case there is nothing to compel because, as we have explained, the plea agreement in fact was fully performed.

We therefore conclude that petitioner has failed to demonstrate that the trial court erred in determining that DMV was entitled to judgment as a matter of law as to each of his challenges to the revocation of his driving privileges in accordance with ORS 809.410(1).

Affirmed.