Argued and submitted August 4, 2005, reversed and remanded with instructions to
reinstate DMV order suspending driving privileges March 8, 2006

In the Matter of the Suspension of
the Driving Privileges of

Lance Lee DYRDAHL,
*Respondent,*

*v.*

DEPARTMENT OF TRANSPORTATION,
DRIVER AND MOTOR VEHICLE
SERVICES DIVISION,
*Appellant.*

CV03080087; A124857

131 P3d 770

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

George W. Kelly argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Linder, Judge, and Breithaupt, Judge pro tempore.

BREITHAUPT, J. pro tempore.

## BREITHAUPT, J. pro tempore

The state appeals a judgment of the circuit court ordering the Driver and Motor Vehicle Services Division of the Department of Transportation (DMV) to reinstate petitioner's driving privileges. The state argues that the circuit court erred by applying the wrong statute to this case. We agree and reverse and remand with instructions to reinstate the DMV order suspending petitioner's driving privileges.

On April 11, 2003, petitioner pleaded guilty to misdemeanor driving while under the influence of intoxicants (DUII) in Arizona, the plea being pursuant to paragraph 28-1381(A)(1) of the Arizona Revised Statutes (ARS). Specifically, petitioner pleaded guilty to driving while under the influence of intoxicating liquor. At that time, petitioner was an Oregon resident with an Oregon driver license. Pursuant to the Driver License Compact (the compact),[1] Arizona officials sent a record of petitioner's conviction to DMV, which then issued a final order suspending petitioner's driving privileges for one year under ORS 813.400(1).[2] In November 2003, Arizona set aside petitioner's conviction following his successful completion of an alcohol treatment program administered by Arizona. Petitioner then sought reinstatement of his Oregon driving privileges through an administrative hearing before DMV. DMV refused to reinstate petitioner's driving privileges.

Petitioner appealed to the circuit court, which ruled in petitioner's favor on his motion for summary judgment. More specifically, the court ruled that ORS 813.400(1) did not apply to petitioner's case, but rather that ORS 809.400(1) did.[3] ORS 809.400(1) allows for discretionary suspension or

---

[1] Both Arizona and Oregon are parties to the compact. ARS 28-1852; ORS 802.540.

[2] ORS 813.400(1) states, in relevant part: "[U]pon receipt of a record of conviction for misdemeanor [DUII], the Department of Transportation shall suspend the driving privileges of the person convicted. The suspension shall be for a period described under Schedule II of ORS 809.428[.]" ORS 809.428(2)(a) provides for a suspension of one year.

[3] ORS 809.400(1) states, in relevant part:

"[T]he Department of Transportation may suspend or revoke the driving privileges of any resident of this state upon receiving notice of the conviction of

revocation of driving privileges by DMV following certain out-of-state convictions. The court then ruled that ORS 809.400(1) was unconstitutional in that it was void for vagueness because it contained no standards to guide DMV on when and how to use that discretion.

The circuit court also ruled that DMV had abused its discretion by not treating similarly situated drivers the same. To understand the circuit court's rationale for that holding, it is necessary to understand two things. First, one must understand the difference between how Oregon and Arizona treat DUII charges. In Oregon, a driver charged with DUII may enter a diversion program. ORS 813.200. If the driver does so, the driver must plead guilty or no contest to the charge, but the circuit court must stay the proceedings and withhold judgment. ORS 813.200; ORS 813.230. If the driver completes the diversion program successfully, the circuit court will dismiss the charge, and the driver will not have been convicted of DUII. ORS 813.250. If the driver does not complete the diversion program successfully, the circuit court must enter the driver's plea, and the driver will have been convicted of DUII. ORS 813.255. In contrast, a driver charged in Arizona with DUII must be convicted of that crime before the driver enters Arizona's diversion program. ARS 28-1381. Successful completion of the program leads to a reduced sentence and the possibility of having the DUII conviction set aside. ARS 28-1381; ARS 13-907.[4] Failure to complete the program leads to contempt of court proceedings. The key difference between the procedures adopted by the two states is that drivers charged with DUII in Oregon can avoid conviction by undergoing diversion, but drivers charged with DUII in Arizona can undergo diversion only after they are convicted.

---

such person in another jurisdiction of an offense therein that, if committed in this state, would be grounds for the suspension or revocation of the driving privileges of the person."

[4] ARS 13-907 states that an order to set aside a conviction must be accompanied by an order "that the person be released from all penalties and disabilities resulting from the conviction other than [certain ones not applicable to this case]." That statute, however, refers only to the effect that Arizona will give to the order setting aside the conviction; it has no bearing on Oregon law, and DMV is not bound to comply with its terms.

■        Second, under ORS 813.400(1), DMV is required to suspend the driving privileges of any driver *convicted* of DUII in Oregon or any other state. *Wilcox v. MVD*, 89 Or App 498, 750 P2d 181 (1988). Thus, a driver, such as petitioner, who is convicted of DUII in Arizona, even if that conviction is later set aside upon completion of a diversion program, will have his Oregon driving privileges suspended even though that driver, had he been charged with DUII in Oregon, might have avoided conviction and suspension by undergoing diversion first. Petitioner's argument, which the circuit court accepted, boils down to the claim that DMV treats drivers who commit DUII in Oregon differently from and more favorably than those who commit DUII in Arizona. Because the circuit court ruled that petitioner was eligible for diversion in Oregon, it believed that, had petitioner been charged in Oregon with the same crime, he would not have been convicted and DMV would not have suspended his driving privileges. Accordingly, the circuit court found DMV's suspension of petitioner's driving privileges to be an abuse of discretion.

As an additional and independent ground for its judgment, the circuit court ruled that DMV must reinstate petitioner's driving privileges now that Arizona has set aside the conviction on which DMV based the suspension. Finally, the circuit court ruled that the state was estopped from suspending petitioner's driving privileges under a settlement agreement between the attorneys for DMV and petitioner. DMV appealed and we review for errors of law. ORS 813.450.

■        We considered and rejected much of the circuit court's reasoning in *Wilcox*. In that case, we upheld the suspension of Oregon driving privileges based on the driver's California conviction for DUII. 89 Or App at 502. Comparing ORS 813.400(1) with ORS 809.400(1), we concluded that

> "the most reasonable reading is that the discretion accorded under ORS 809.400(1) with respect to suspension upon notice of out-of-state convictions generally[, that is, convictions for any offense leading to suspension,] is limited by the mandatory language of ORS 813.400(1), which we conclude applies to all DUII convictions, including those of which DMV receives notice under the compact."

*Id.* at 501. Accordingly, ORS 809.400(1) does not apply to this case; ORS 813.400(1) does.[5]

We further concluded in *Wilcox* that, under the compact, Oregon must treat "out-of-state conduct the same as it would treat [in-state] conduct" in the sense that DMV must suspend an Oregon driver's driving privileges if his "out-of-state conduct matches Oregon's definition of the offense of DUII," 89 Or App at 502, that is, if the driver is convicted in another state under a statute that "defines DUII in essentially the same way as it is defined under Oregon law." *Id.* at 500 n 1. The compact also "protects licensees from an Oregon suspension based on out-of-state conduct that, had it occurred in Oregon, would not constitute an offense requiring suspension." *Buck v. Motor Vehicles Division*, 80 Or App 565, 569, 723 P2d 338 (1986). "For example, if another state establishes a culpable blood alcohol level lower than Oregon's and an Oregon resident is convicted of DUII solely on that basis, his Oregon license could not be suspended, because that conduct is not a violation of any Oregon law." *Id.* at 569 n 6; *cf. State v. Ortiz*, 202 Or App 695, 124 P3d 611 (2005) (discussing such a situation in relation to ORS 813.010(5)). We upheld the suspensions in *Wilcox* and *Buck* because the California DUII statutes at issue in those cases were "essentially the same" as Oregon's DUII statute, *Wilcox*, 89 Or App at 500 n 1, and "the conduct reported by California would constitute DUII in Oregon." *Buck*, 80 Or App at 569.[6]

■  In the present case, petitioner pleaded guilty to Arizona's misdemeanor DUII statute, which prohibits a person from driving "[w]hile under the influence of intoxicating liquor * * * if the person is *impaired to the slightest degree*." ARS 28-1381(A)(1) (emphasis added). We must examine whether ARS 28-1381(A)(1) is substantially similar to Oregon's misdemeanor DUII statute: ORS 813.010(1)(b). *See*

---

[5] We therefore do not consider the circuit court's ruling that ORS 809.400 is unconstitutional.

[6] In *Buck*, we noted that DMV "can do no more than examine the conduct reported by a foreign state as constituting an offense and inquire as to whether that conduct matches Oregon's definition of the offense." 80 Or App at 569 n 5. Indeed, DMV was required to make that inquiry in petitioner's administrative hearing under ORS 809.440(2)(b)(B). DMV found that the Arizona and Oregon offenses were comparable.

ORS 802.540 (requiring that state DUII laws be "substantially similar").[7] ORS 813.010(1)(b) prohibits persons from driving while "under the influence of intoxicating liquor." The Oregon Supreme Court has held that "a person is under the influence of intoxicating liquor when he or she has consumed enough liquor to *adversely affect that person's mental or physical faculties to some noticeable or perceptible degree.*" *Chartrand v. Coos Bay Tavern,* 298 Or 689, 699-700, 696 P2d 513 (1985) (emphasis added); *see also Holcomb v. Sunderland,* 321 Or 99, 105, 894 P2d 457 (1995) ("[W]hen [the Supreme Court] interprets a statute, that interpretation becomes part of the statute as if it were written into the law at the time of its enactment.").

There are two differences between Arizona's and Oregon's statutes. First, Arizona focuses on impairment whereas Oregon focuses on adversely affected mental or physical faculties. Second, Arizona uses the phrase "to the slightest degree" whereas Oregon uses the phrase "to some noticeable or perceptible degree." We believe those distinctions to be insubstantial. To "impair" is "to make worse : to diminish in quantity, value, excellence, or strength : do harm to." *Webster's Third New Int'l Dictionary* 1131 (unabridged ed 2002). Being impaired, therefore, is substantially similar to being adversely affected in one's faculties. Additionally, it is impossible to determine whether a driver is impaired to the

---

[7] Article IV, section a, subsection 2, of the compact defines DUII as "[d]riving a motor vehicle while under the influence of intoxicating liquor * * * to a degree which renders the driver incapable of safely driving a motor vehicle." ORS 802.540. When a state's laws do not define an offense "in precisely the words employed" in the compact, Article IV, section c, allows a state to identify offenses that are "substantially similar" to those described in the compact. ORS 802.540. Oregon has identified ORS 813.400 as the state offense that is "substantially similar" to the compact's definition of DUII. ORS 802.550(4)(b). It does not appear that Arizona has so designated ARS 28-1381(A)(1).

In *Wilcox,* we described the test as requiring that the laws be "essentially the same," 89 Or App at 500 n 1, and in *Buck* we inquired whether the laws "matche[d]." 80 Or App at 569 n 5. While there is no meaningful difference between the three expressions of the test, we use the statutory term "substantially similar" in this case. We also note that other, similar phrases have been used to describe other, similar inquiries, although those may also be distinctions without a difference. *See* ORS 809.440(2)(b)(B) (allowing reinstatement of driving privileges upon proof that an out-of-state offense was "not comparable to an offense under Oregon law"); *Ortiz,* 202 Or App at 698-99 (holding that the phrase "statutory counterpart" found in ORS 813.010(5) (felony DUII) means "remarkably similar" (quoting *Webster's Third New Int'l Dictionary* 520 (unabridged ed 2002))).

slightest degree without being able to notice or perceive that impairment. We hold that ARS 28-1381(A)(1) and ORS 813.010(1)(b) are substantially similar and that, therefore, DMV complied with ORS 813.400(1) when it suspended petitioner's driving privileges for one year.[8]

■    Petitioner next argues that DMV's suspension of his driving privileges violates Article I, section 20, of the Oregon Constitution[9] and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution[10] by treating Oregon drivers who commit DUII in Oregon differently from and more favorably than Oregon drivers who commit DUII in Arizona. Petitioner's argument parallels the ruling of the circuit court regarding DMV's discretion under ORS 809.400, and focuses on the small but important differences between Arizona's and Oregon's diversion programs. In short, petitioner claims that, had he committed and been charged with DUII in Oregon, he would have been eligible for and completed Oregon's diversion program. That would have meant no conviction and no suspension. Petitioner maintains that DMV was able to suspend his driving privileges only because he committed and was charged with DUII in Arizona, which put a conviction on his record until he completed Arizona's diversion program.

---

[8] In anticipation of that result, petitioner urges us to overrule *Wilcox* and *Buck* and reinterpret the meaning of ORS 813.400 and ORS 809.400 using the framework laid out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993) (setting out framework for statutory interpretation). Petitioner argues that, were we to do so, we would conclude the opposite of what we held in *Wilcox* and *Buck*. We disagree. We believe that our analysis would be essentially the same under the *PGE* framework because in both cases we looked to the text and context of ORS 813.400 and ORS 809.400 to reach what we found to be clear conclusions. Petitioner presents us with nothing that leads us to believe that we would reach a different result today. We therefore decline petitioner's invitation to reexamine our interpretations of ORS 813.400 and ORS 809.400, or our holdings in *Wilcox* and *Buck*.

[9] Article I, section 20, states: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not belong to all citizens."

[10] The Fourteenth Amendment states, in relevant part: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." We note that petitioner makes no argument regarding the Privileges or Immunities Clause of that amendment ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States * * *.").

We reject petitioner's argument because it is based on two unsound premises. First, petitioner assumes that, had he been charged with DUII in Oregon, he would have been eligible for and completed Oregon's diversion program, thus avoiding conviction and suspension. That assumption is misplaced. In *Buck*, we held that the comity and equality required by the compact pertain only to "the facts and substantive elements of offenses, not to a state's special procedural opportunities to avoid conviction." 80 Or App at 569.[11] We noted that eligibility for diversion is not automatic, but subject to qualifications and agency discretion, and that, even then, successful completion of the program is not assured. *Id.* at 569 n 4; *see also State v. Dendurent*, 64 Or App 575, 578, 669 P2d 361 (1983) (stating that the argument that " 'all persons are entitled to an initial diversion' is * * * patently incorrect"). As a statutory matter, DMV is not required to speculate or assume that anyone charged with DUII in Oregon will ultimately complete a diversion program and avoid conviction and suspension. As a matter of constitutional interpretation, we are not required to make that assumption either.

Second, petitioner describes a class—those who commit and are charged with DUII and who ultimately complete a diversion program—that is not relevant to this case. We have already described the problems with assuming that a driver will complete a diversion program. Moreover, ORS 813.400(1) does not allow or require DMV to suspend the driving privileges of those who are merely charged with DUII, whether in Oregon or another state. Rather, that statute requires suspension only upon *conviction* for DUII. In that regard, it mandates suspension regardless of whether the conviction occurred in Oregon or another state. Thus, DMV treats the same all drivers who are convicted of DUII in Oregon or, as is the case here, in another state. Furthermore, ORS 813.200 and ORS 813.215 require DMV to treat the same all drivers *charged* with DUII in Oregon, regardless of which state they live in or which state licensed them to drive. In summary, DMV treats in the same manner all drivers

---

[11] Indeed, in *Wilcox* we upheld the suspension of driving privileges despite the Oregon driver's completion of a California program that, he contended, was more rigorous than Oregon's. 89 Or App at 502.

charged with DUII in Oregon, regardless of where they reside or are licensed, just as it treats in the same manner all Oregon drivers convicted of DUII, regardless of which state convicted them. DMV did not treat petitioner differently from others similarly situated. Accordingly, petitioner's claims under Article I, section 20, and the Equal Protection Clause must fail.

■    Finally, petitioner, like the circuit court, focuses on an apparent agreement between the parties' attorneys. The circuit court ruled, and petitioner argues, that DMV is estopped from refusing to reinstate petitioner's driving privileges because DMV's attorney apparently agreed that DMV would reinstate them upon receipt of a certified copy of the Arizona order setting aside petitioner's conviction. That argument fails because DMV's "representations cannot, through estoppel, force the agency to act contrary to statute." *Mannelin v. DMV*, 176 Or App 9, 15, 31 P3d 438 (2001), *aff'd by an equally divided court*, 336 Or 147, 82 P3d 162 (2003). ORS 813.400(1) unambiguously requires DMV to suspend an Oregon driver's driving privileges upon receipt of a record of a misdemeanor DUII conviction in any state. That statute does not authorize DMV to reinstate driving privileges upon receipt of another state's order setting aside the conviction, and petitioner points to no statute that would authorize such action.[12]

Reversed and remanded with instructions to reinstate DMV order suspending driving privileges.

---

[12] Moreover, the Arizona court order setting aside petitioner's conviction states that petitioner's conviction, though set aside, can still be used by Arizona in any subsequent prosecution against petitioner, and that any Arizona driver license petitioner might have is still subject to discretionary suspension under ARS 28-3306. Thus, petitioner's Arizona conviction still stands in Arizona, even if only for limited purposes.